IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**RICHARD ALEXANDER, BENNIE COLLUM,**                                    **PLAINTIFFS**
**DON DAVIS, DUANE GRIMES, JOHN HOUPT,**
**JOHN HOWLAND, JASON PHILLIPS,**
**DWAYNE PRITCHARD, RANDY SCHROEDER,**
**KYLAN UTLEY and ROBERT McNEIL**


vs.                                    No. 4:13-cv-650-BSM


**TUTLE AND TUTLE TRUCKING, INC.;**                                    **DEFENDANTS**
**TOMMY PAUL TUTLE, Individually and as Officer and**
**Director of TUTLE AND TUTLE TRUCKING, INC.;**
**and GARY TUTLE, Individually and as Officer and**
**Director of TUTLE AND TUTLE TRUCKING, INC.;**
**SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.);**
**SCHLUMBERGER TECHNOLOGY CORPORATION; and**
**SCHLUMBERGER TECHNOLOGIES, INC.**


**REPLY IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**


**I.      INTRODUCTION**

Plaintiffs have shown all undisputed facts necessary for this Court to grant their

Motion for Partial Summary Judgment ("MPSJ").  ECF No. 45.  Defendants have failed

to produce any material counter-evidence that is based on more than speculation,

conjecture, or fantasy or merely alleged factual disputes between the parties.

Therefore, this Court must grant Plaintiffs' MPSJ.

The undisputed facts show that Plaintiffs were not reasonably expected to drive

across state lines as a regular part of their duties, and any actual interstate driving was

**Page 1 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

irregular, extraordinary, and *de minimis*, as in <u>Flowers v. Regency Transportation, Inc.</u>[1] among other cases.

Tutle and Tutle Trucking, Inc. ("T&T"), undisputedly told Plaintiffs that drivers assigned to SLB trucks ("SLB Drivers") were expected to ordinarily drive in Arkansas and would be paid a salary for 60 hours per week.  Consistent with T&T's promises, SLB Drivers primarily hauled frack sand in Arkansas for approximately a year and a half, from January of 2012 through mid-July of 2013.  The following chart illustrates this point:

| Name | Dates as SLB Prior to Temporary-OK/TX (mid-July of 2013) | | Total Days | Number of Days Out of State | Percentage of Days Out of State |
|---|---|---|---|---|---|
| Alexander, Richard | 1/18/2012 | 7/18/2013 | 547.00 | 1 | 0.183% |
| Davis, Don | 1/30/2012 | 5/1/2013 | 457.00 | 1 | 0.219% |
| Houpt, John | 3/14/2013 | 7/17/2013 | 125.00 | 0 | 0.000% |
| Howland, John | 1/16/2012 | 10/6/2012 | 264.00 | 2 | 0.758% |
| Phillips, Jason | 1/15/2013 | 7/24/2013 | 190.00 | 0 | 0.000% |
| Schroeder, Randy | 8/10/2012 | 7/22/2013 | 346.00 | 1 | 0.289% |
| Pritchard, Dwayne | 5/9/2012 | 6/5/2013 | 392.00 | 4 | 1.020% |
| Grimes, Duane | 1/16/2012 | 7/21/2013 | 552.00 | 5 | 0.906% |
| Collum, Bennie | 1/29/2012 | 12/17/2012 | 323.00 | 3 | 0.929% |
| Utley, Kylan | 1/18/2012 | 7/2/2013 | 531.00 | 2 | 0.377% |
| McNeil, Robert | 4/22/2012 | 5/3/2013 | 376.00 | 1 | 0.266% |

For this period of time, the few occasions on which some Plaintiffs drove briefly outside of Arkansas involved extraordinary circumstances not related to their primary duty of hauling frack sand, such as bringing the trucks for inspections or relocating equipment.  These actual out-of-state trips for that period of time are *de minimis* both in their purpose and in their frequency.

---

[1]     535 F. Supp. 2d 765 (S.D. Miss. 2008).  Discussed more fully in Section V.

**Page 2 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**



* Each Plaintiff seeks overtime wages only for the period of time represented in green.  That is the period of time in which each Plaintiff was designated as an SLB Driver and their ordinary job duties consisted of hauling frack sand to shale oil wells located in Arkansas.  The red color shows the period of time when each Plaintiff was employed by T&T, but was designated to drive Tutle trucks.  **Plaintiffs do not seek overtime pay for the time in which they were designated to drive Tutle trucks.**  *Note*: This graph has been updated from Plaintiffs' Brief in Support of Motion for Partial Summary Judgment to correctly reflect that Alexander began working as an SLB Driver on January 18, 2012.  See Ex. 4 (showing first date Jan. 18, 2012).

**Page 3 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

## II.     TABLE OF CONTENTS

I.     **INTRODUCTION** ....................................................................................... 1

II.    **TABLE OF CONTENTS** ......................................................................... 4

III.   **TABLE OF AUTHORITIES** ................................................................... 6

IV.    **TABLE OF EXHIBITS** ............................................................................ 7

V.     **PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ELEMENTS OF AND DEFENSES TO LIABILITY.** ............................................ 10

    A.     **The MCA Exemption Does Not Apply to Plaintiffs for at Least Some of the Time in Which Plaintiffs Were Designated as SLB Drivers Because Plaintiffs Were Not Reasonably Expected to Drive in Interstate Commerce and Their Actual Interstate Trips were *De Minimis*.** ..................................... 11

        1.     The Motor Carrier Act Exemption Requires Defendants to Prove that Plaintiffs' Duties Included a ***Reasonable Expectation*** of Driving in Interstate Commerce, ***Not a Mere Possibility***, and that any Actual Involvement with Interstate Commerce was not *De Minimis*. ..................................... 12

            a.     *An employee who works in excess of 40 hours per week is entitled to be paid time and a half for all hours over 40, unless the employee is subject to the MCA Exemption.* ................................................................. 12

            b.     *Under the MCA Exemption, employees must be reasonably expected to drive across state lines as part of their ordinary job duties, and any actual interstate driving must not be de minimis.* ......................................... 13

        2.     At Least from the Beginning of the SLB Job in January of 2012 through Mid-July of 2013, Plaintiffs' Ordinary Duties, as a Class of SLB Drivers, Involved Only a Possibility of Interstate Driving, Not a Reasonable Expectation, and Plaintiffs' Actual Interstate Trips were *De Minimis*. ......................................... 19

        3.     Plaintiffs Who Were Still Working as SLB Drivers in Mid-July of 2013 Were Not Expected to Regularly Drive in Interstate Commerce Through the End of the SLB Driving Job Position, Despite a Temporary Assignment to Oklahoma and Texas. ..................................................................................... 33

    B.     **Alternatively, The MCA Exemption Also Cannot Apply to Certain Plaintiffs in this Case Because T&T Undisputedly and Intentionally Undermined the Public Policy Goals of the MCA Exemption.** ................................................. 33

    C.     **Defendants Have Failed to Present Sufficient Evidence of the Good Faith Defense to Avoid Summary Judgment.** .......................................................... 34

VI.    **PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF THE CALCULATION OF DAMAGES.** ............................................ 36

    A.     **Plaintiffs' Regular Rate and Overtime Rate are Calculated Based upon a 60 Hour Workweek and the Fluctuating Work Week Method and Day-Rate**

**Page 4 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

**Method of Calculating Damages Do not Apply, for at least the Period of Time in which Plaintiffs were Paid a Weekly Salary.** ................................... **37**

    1.    If an Employee is Employed Solely on a Weekly Salary Basis, the Regular Hourly Rate of Pay, on which Time and a Half Must Be Paid, Is Computed by Dividing the Salary by the Number of Hours which the Salary Is Intended to Compensate. ................................................................................................ 37

    2.    For the Period of Time that T&T Paid Plaintiffs a Weekly Salary while Designated as SLB Drivers, each Plaintiff's Weekly Salary was Intended to Compensate each Plaintiff for 60 Hours Per Week. ...................................... 38

**VII.**     **CONCLUSION** .............................................................................................. **40**

**Page 5 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

III.  TABLE OF AUTHORITIES

**Cases**

Barrios v. Suburban Disposal, Inc., No. 2:12-cv-03663 (WJM), 2013 U.S. Dist. LEXIS
    175155 (D.N.J. Dec. 11, 2013) .................................................................... 30
Beauford v. ActionLink, LLC, No. 13-3265, No. 13-3380, 2015 U.S. App. LEXIS 4539
    (8th Cir. Mar. 20, 2015) ............................................................................. 13
Cerutti v. Frito Lay, Inc., 777 F. Supp. 2d 920 (W.D. Pa. 2011)...................................... 13
Cole v. Farm Fresh Poultry, Inc., 824 F.2d 923 (11th Cir. 1987) ............................. 35, 36
Dauphin v. Chestnut Ridge Transp., Inc., 544 F. Supp. 2d 266 (S.D.N.Y. 2008) 12, 16, 31
EEOC v. Home Ins. Co., 672 F.2d 252 (2d Cir. 1982) .................................................. 35
Elliot v. Dave Ernstes & Sons Trucking, No. 1:05-cv-1891-JDT-WTL, 2006 U.S. Dist.
    LEXIS 72278 (S.D. Ind. Oct. 3, 2006).......................................................... 15
Garza v. Smith Int'l, Inc., C-10-100, 2011 U.S. Dist. LEXIS 22869 (S.D. Tex. Mar. 7,
    2011)..................................................................................................... 16
Goldberg v. Faber Industries, Inc., 291 F.2d 232 (7th Cir. 1962) ............................. 13, 16
Horan v. King Cnty., 740 F. Supp. 1471 (W.D. Wash. 1990) ........................................ 35
Johnson v. Hix Wrecker Serv., No. 1:08-cv-50-WTL-JMS, 2009 U.S. Dist. LEXIS 51298
    (S.D. Ind. June 18, 2009)........................................................................... 15
Lieberman v. Corporate Connection Lines, Inc., No. 03-CIV-22814-HOEVELER, 2005
    U.S. Dist. LEXIS 45222 (S.D. Fl. April 21, 2005) .......................................... 31
Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 U.S. Dist. LEXIS 18022
    (S.D.N.Y. Aug. 17, 2005)......................................................... 13, 14, 30, 31
Morgan v. Family Dollar Stores, 551 F.3d 1233 (11th Cir. 2008) ................................. 10
Pritchett v. Werner Enters., No. 12-0182-WS-C, 2013 U.S. Dist. LEXIS 121430 (S.D.
    Ala. Aug. 27, 2013) .................................................................. 21, 30, 32
Renfro v. Emporia, 732 F. Supp. 1116 (D. Kan. 1990).................................................. 35
Songer v. Dillon Res., Inc., 618 F.3d 467 (5th Cir. Tex. 2010) ..................................... 15
Starrett v. Bruce, 391 F.2d 320 (10th Cir. 1968) ...................................................... 15
West v. Anne Arundel Cnty., 3 WH Cases2d 234 (D. Md. 1996) ................................... 35

**Statutes, Rules, & Regulations**

29 C.F.R. § 778.112 (LEXIS 2015) ...................................................................... 38
29 C.F.R. § 778.113 (LEXIS 2015) ...................................................................... 38
29 C.F.R. § 782.2(b)(3) (LEXIS 2015) ....................................................... 14, 30
29 C.F.R. § 790 (LEXIS 2015)............................................................................ 35
29 U.S.C.S. § 259 (LEXIS 2015) ......................................................................... 34

**Page 6 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

## IV.      TABLE OF EXHIBITS

1.      For the sake of consistency and continuity, Plaintiffs incorporate their

exhibits attached to their Motion for Partial Summary Judgment, ECF No. 45.

| Exhibit No. | ECF No. | Description |
|---|---|---|
| 1 | 45-1 | Defendant Tutle & Tutle's Answers to Plaintiff Richard Alexander's First Set of Interrogatories and Requests for Production |
| 2 | 45-2 | Plaintiff Richard Alexander's Deposition Excerpts ("Alexander Dep.") |
| 3 | 45-3 | Plaintiff Richard Alexander's Resignation/Termination Sheet |
| 4 | 45-4 | Plaintiff Richard Alexander's Schlumberger E-Journey Report |
| 5 | 45-5 | Plaintiff Duane Grimes's Deposition Excerpts ("Grimes Dep.")[2] |
| 6 | 45-6 | Plaintiff Duane Grimes's Schlumberger E-Journey Report |
| 7 | 45-7 | Plaintiff Benny Collum's Deposition Excerpts ("Collum Dep.") |
| 8 | 45-8 | Plaintiff Benny Collum's Schlumberger E-Journey Report |
| 9 | 45-9 | Plaintiff Dwayne Pritchard's Deposition Excerpts ("Pritchard Dep.") |
| 10 | 45-10 | Plaintiff Dwayne Pritchard's Schlumberger E-Journey Report |
| 11 | 45-11 | Plaintiff Robbie McNeil's Deposition Excerpts ("McNeil Dep.") |
| 12 | 45-12 | Plaintiff Don Davis's Deposition Excerpts ("Davis Dep.") |
| 13 | 45-13 | Plaintiff Don Davis's Schlumberger E-Journey Report |
| 14 | 45-14 | Plaintiff Kylan Utley's Deposition Excerpts ("Utley Dep.") |
| 15 | 45-15 | Plaintiff Kylan Utley's Schlumberger E-Journey Report |
| 16 | 45-16 | Plaintiff John Houpt's Deposition Excerpts ("Houpt Dep.") |
| 17 | 45-17 | Plaintiff John Houpt's Schlumberger E-Journey Report |
| 18 | 45-18 | Plaintiff Jason Phillips's Deposition Excerpts ("Phillips Dep.") |
| 19 | 45-19 | Plaintiff Randy Schroeder's Deposition Excerpts ("Schroeder Dep.") |
| 20 | 45-20 | Plaintiff Randy Schroeder's Schlumberger E-Journey Report |
| 21 | 45-21 | Plaintiff John Howland's Deposition Excerpts ("Howland Dep.") |
| 22 | 45-22 | Plaintiff John Howland's Schlumberger E-Journey Report |
| 23 | 45-23 | Copy of BHP Billiton Inc. Press Release re: Purchase of Chesapeake's Arkansas Shale Oil Assets, available at http://www.bhpbilliton.com/home/investors/news/Pages/Articles/ |

---

[2]      Plaintiff Duane Grimes sat for his deposition on two separate days: March 16, 2015, and March 30, 2015.  Unless otherwise noted, the citation "Grimes Dep." refers to Duane Grimes's deposition of March 16, 2015.  The March 30 deposition will be cited as, for example, "Grimes Dep. 20:1–4, March 30, 2015."

**Page 7 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

| | | |
|---|---|---|
| | | BHP%20Billiton%20Announces%20Acquisition%20Of%20Chesapeake%20Energy%20Corporation's%20Fayetteville%20USA,%20Shale%20Assets.aspx |
| 24 | 45-24 | Copy of Wall Street Journal news article re: BHP Purchase of Chesapeake's Arkansas Shale Oil Assets, available at http://www.wsj.com/articles/SB10001424052748703800204576158834108927732 |
| 25 | 45-25 | Copy of New York Times news article re: BHP Purchase of Chesapeake's Arkansas Shale Oil Assets, available at http://query.nytimes.com/gst/fullpage.html?res=950CE5D7153CF931A15751C0A9679D8B63 |
| 26 | 45-26 | Copy of Bloomberg Business news article re: BHP Purchase of Chesapeake's Arkansas Shale Oil Assets, available at http://www.bloomberg.com/news/articles/2011-02-21/bhp-buys-chesapeake-unit-for-4-75-billion-adding-u-s-shale-gas-assets |
| 27 | 45-27 | Liability Analysis Spreadsheet |

2.      For the sake of consistency and continuity, Plaintiffs also incorporate into this Reply the following exhibits from Plaintiffs' Response to Defendants' Joint Statement of Undisputed Material Facts:

| Exhibit | ECF No. | Description |
|---|---|---|
| 28 | 59-1 | Copy of Schlumberger's E-Journey Web Page, available at https://www.slb.com/news/inside_news/2011/2011_0915_get_there_from_here.aspx |
| 29 | 59-2 | Sample SLB Pre-Trip Inspection Report |
| 30 | 59-3 | Sample Convoy Meeting Checklist |
| 31 | 59-4 | Copy of SLB E-Journey/Safety Hang Tag |
| 32 | 59-5 | Updated Liability Analysis Spreadsheet[3] |
| 33 | 59-6 | Updated Alexander Deposition Excerpts ("Alexander Dep.") |
| 34 | 59-7 | Updated Grimes Deposition Excerpts ("Grimes Dep.") |
| 35 | 59-8 | Updated Collum Deposition Excerpts ("Collum Dep.") |
| 36 | 59-9 | Updated Pritchard Deposition Excerpts ("Pritchard Dep.") |
| 37 | 59-10 | Updated McNeil Deposition Excerpts ("McNeil Dep.") |
| 38 | 59-11 | Updated Davis Deposition Excerpts ("Davis Dep.") |
| 39 | 59-12 | Updated Utley Deposition Excerpts ("Utley Dep.") |

---

[3]      Exhibit 32 is intended to replace Exhibit 27 to Plaintiffs' Motion for Partial Summary Judgment.  In Exhibit 27, Plaintiffs mistakenly stated that Alexander began working as an SLB Driver on August 24, 2012.  See Ex. 27, ECF No. 45-27.  In reality, Alexander began working as an SLB Driver on January 18, 2012.  See Ex. 4 (showing first date as SLB Driver on January 18, 2012).

**Page 8 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

| 40 | 59-13 | Updated Houpt Deposition Excerpts ("Houpt Dep.") |
| 41 | 59-14 | Updated Phillips Deposition Excerpts ("Phillips Dep.") |
| 42 | 59-15 | Updated Schroeder Deposition Excerpts ("Schroeder Dep.") |
| 43 | 59-16 | Updated Howland Deposition Excerpts ("Howland Dep.") |

**Page 9 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

**V.    PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ELEMENTS OF AND DEFENSES TO LIABILITY.**

Plaintiffs are entitled to partial summary judgment on the elements of—and defenses to—liability, which they sought in their MPSJ.[4]  Defendants have stipulated to an employer-employee relationship and the coverage requirements of the FLSA and the AMWA.  See Resp. to Pls. Mot. for Partial Summ. J. ("Defs.' Resp.") 8, ECF No. 63; Defs.' Objections and Resp. to Pls.' Statement of Undisputed Material Facts ("Defs.' Resp. to SUMF") 4, Resp. Nos. 4–5, ECF No. 62.

Defendants have also failed to set forth any genuine, material factual dispute as to the applicability of the Motor Carrier Act exemption ("MCA Exemption").  This Section is dedicated to explaining why this is the case.  Section A below reiterates Plaintiffs' affirmative reasons for granting them partial summary judgment on the MCA Exemption, but also rebuts Defendants' arguments from their Response.  Section B reiterates the arguments in favor of recognizing and applying a public policy exception to certain plaintiffs in this case, and rebuts Defendants arguments from their Response on this

---

[4]     To succeed on a claim for an FLSA violation, a plaintiff has the burden to prove the following elements: **(1)** the existence of an **employer-employee relationship** with the defendant, see 29 U.S.C.S. § 207(a) (requiring payment of overtime by "employers" to "employees"); **(2) coverage** under the interstate commerce requirements of the FLSA, see id. (requiring payment of overtime to employees "engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce"), **(3)** employee's performance of **work over forty hours per week**, see id. (prohibiting employers from working employees for more than forty hours per week unless it pay one and one-half times the employee's regular rate for all hours worked over forty in the week) and **(4)** employer's **failure to pay an overtime premium**, see id; see also, Morgan v. Family Dollar Stores, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008) (stating the four elements of a *prima facie* wage claim under the FLSA).

These same elements apply to AMWA claims, except that the "coverage" element requires only proof that the employer employed four or more employees during each relevant work week.  See Ark. Code Ann. §§ 11-4-211 (stating overtime requirements),  11-4-203(4)(B) (defining "employer") (LEXIS 2015).

**Page 10 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

issue.  Finally, Section C explains why Defendants are not entitled to the Good Faith Defense.

**A.    The MCA Exemption Does Not Apply to Plaintiffs for at Least Some of the Time in Which Plaintiffs Were Designated as SLB Drivers Because Plaintiffs Were Not Reasonably Expected to Drive in Interstate Commerce and Their Actual Interstate Trips were *De Minimis*.**

The MCA Exemption to the overtime requirements of the FLSA and AMWA does not apply to Plaintiffs for at least some of the time in which Plaintiffs were designated as SLB Drivers because Plaintiffs were not reasonably expected to drive in interstate commerce and their actual interstate trips were *de minimis*.  Section 1 incorporates the law from Plaintiffs' Brief in Support of Motion for Partial Summary Judgment ("BIS"), ECF No. 47, that the MCA Exemption requires Defendants to prove that Plaintiffs' duties included a reasonable expectation, not a mere possibility, of interstate driving, and that any actual interstate driving was not *de minimis*.  Section 1 also rebuts Defendants' errant legal arguments that were made pursuant to <u>Allen v. Coil Tubing, Inc.</u>,[5] <u>Resch v. Krapf's Coaches, Inc.</u>,[6] and <u>Songer v. Dillon Resources Inc</u>.[7]

Section 2 summarizes the undisputed facts that Plaintiffs have submitted that negate the MCA Exemption on the legal premises discussed in Section 1, at least through mid-July of 2013.   Section 2 then explains how Defendants have failed to submit any additional evidence that would create a genuine dispute of material fact as to the applicability of the MCA Exemption.

---

[5]    755 F.3d 279 (5th Cir. 2014).

[6]    No. 11-6893, 2013 U.S. Dist. LEXIS 123438 (E.D. Pa. Aug. 29, 2013).

[7]    618 F.3d 467 (5th Cir. 2010).

**Page 11 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

Section 3 simply incorporates the equivalent section from Plaintiffs' BIS regarding the time period after mid-July of 2013.

    1.    The Motor Carrier Act Exemption Requires Defendants to Prove that Plaintiffs' Duties Included a ***Reasonable Expectation*** of Driving in Interstate Commerce, ***Not a Mere Possibility***, and that any Actual Involvement with Interstate Commerce was not *De Minimis*.

The Motor Carrier Act Exemption requires Defendants to prove that Plaintiffs' duties included a ***reasonable expectation*** of driving in interstate commerce, ***not a mere possibility***, and that any actual involvement with interstate commerce was not *de minimis*.   For convenience, Section a. incorporates Plaintiff's briefing on the legal background from Plaintiff's BIS (See BIS 27–32, ECF No. 47)  with a few particularly relevant restatements.   Section b. provides the legal authorities for the following synthesized legal premise:  The Motor Carrier Act Exemption requires Defendants to prove that Plaintiffs' duties included a ***reasonable expectation*** of driving in interstate commerce, ***not a mere possibility***, and that any actual involvement with interstate commerce was not *de minimis*.  Plaintiffs also use Section b. to rebut Defendants' errant arguments made pursuant to <u>Allen</u>, <u>Resch</u>, and <u>Songer</u>.

    *a.    An employee who works in excess of 40 hours per week is entitled to be paid time and a half for all hours over 40, unless the employee is subject to the MCA Exemption.*

Plaintiffs incorporate the law from their BIS with a few particularly relevant restatements.  See BIS 27–32, ECF No. 47.  "Whether the motor carrier exemption applies to an employee depends on the nature of both the employer's and employees' activities."  <u>Dauphin v. Chestnut Ridge Transp., Inc.</u>, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008) (citing 29 C.F.R. § 782.2(a)); <u>cf.</u>, <u>Goldberg v. Faber Industries, Inc.</u>, 291 F.2d 232,

**Page 12 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

235 (7th Cir. 1962) ("The District Court was in error in holding the employer's operations were controlling. The test is the nature of the transportation performed by the employees."); accord, Cerutti v. Frito Lay, Inc., 777 F. Supp. 2d 920, 940 (W.D. Pa. 2011) ("This court finds persuasive the rationale of the majority of other district courts . . . . and concludes that under SAFETEA-LU an employee's activities are considered in determining whether or not he or she is subject to the authority of the Secretary of Transportation . . . .").

Further, **the MCA Exemption is construed narrowly against the employer, and the employer bears the burden of showing that the employee falls within it**. Beauford v. ActionLink, LLC, No. 13-3265, No. 13-3380, 2015 U.S. App. LEXIS 4539 at *10 (8th Cir. Mar. 20, 2015);  Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 U.S. Dist. LEXIS 18022 at *17 (S.D.N.Y. Aug. 17, 2005) ("The motor carrier exemption, like all exemptions to the FLSA, is 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'").

> b.  *Under the MCA Exemption, employees must be reasonably expected to drive across state lines as part of their ordinary job duties, and any actual interstate driving must not be* de minimis*.*

Under the MCA Exemption, employees must be reasonably expected to drive across state lines as part of their ordinary job duties, and any actual interstate driving must not be *de minimis*.  Plaintiffs incorporate into this Section Plaintiffs' law statements on this point from their BIS, see BIS 33–43, ECF No. 47, with some particularly relevant restatements, clarifications, and rebuttals of Defendants' legal argument in Defendants'

**Page 13 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

Response, see Defs.' Resp., ECF No. 63.  As stated by the relevant regulations and cases, drivers must be "*likely* to be[] called upon in the *ordinary* course of [their] work to perform, either regularly or from time to time," interstate safety-affecting activities.  29 C.F.R. § 782.2(b)(3) (LEXIS 2015); see also, Morris v. McComb, 332 U.S. 422, 433 (1947) (holding drivers exempt where, *inter alia*, their interstate trips were "a natural, integral and apparently inseparable part of the common carrier service of the [employer] and of his drivers"); Masson, 2005 U.S. Dist. LEXIS 18022 at *24 ("Driving in interstate commerce alone does not trigger the motor carrier exemption. *Such driving, however frequent, must have been an expected and regular part of an employee's job duties*." (emphasis added)).

Put another way, jurisdiction does not even attach, "if the possibility of interstate driving is remote." Op. and Order at 4, Phillips, No. 4:11CV00776-JLH, filed in this case as ECF No. 10-2 (citing Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37.902, 37.903 (July 23, 1981).

In Phillips, the defendant submitted an affidavit stating that "[a]ny of the . . . drivers . . . could have been and can be called upon to drive their assigned truck over public highways that cross state lines." Id.  In response, the Court noted that this statement was insufficient to satisfy the defendant's burden of proof regarding the MCA Exemption because it merely stated a possibility, not a reasonable expectation, of interstate driving:

> This evidence is insufficient to meet Oil Patch's burden for several reasons.

**Page 14 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

First, the Secretary of Transportation has jurisdiction over a driver who could "reasonably have been expected" to make an interstate run, but Russell states only that Phillips "can be called upon" to drive his truck on public highways that cross state lines, which is to state a possibility, not a reasonable expectation. Oil Patch has provided no evidence to move the prospect that Phillips might drive in interstate commerce from a possibility to a reasonable expectation.

Id.

Defendants have failed to recognize this important distinction, stating that "it is the ***possibility*** of being called on to travel interstate as part of one's ongoing job duties that is determinative of FLSA exemption."  T&T Defs.' Br. in Supp. of Mot. for Summ. J. ("Defs.' Br.") 13, ECF No. 53.  Defendants cite several cases for this proposition, but the cited cases do not stand for Defendants' simple "possibility" standard.  See Songer v. Dillon Res., Inc., 618 F.3d 467, 474 (5th Cir. Tex. 2010) ("if drivers can be ***reasonably expected*** to perform interstate transport, the MCA exemption applies (emphasis added)); Starrett v. Bruce, 391 F.2d 320, 323 (10th Cir. 1968) (invoking McComb and stating "[a]ll of appellee's ***truck drivers were assigned work indiscriminately*** and all would have actually driven in interstate commerce if such hauls had been obtained by appellee." (emphasis added)) Elliot v. Dave Ernstes & Sons Trucking, No. 1:05-cv-1891-JDT-WTL, 2006 U.S. Dist. LEXIS 72278 at *23 (S.D. Ind. Oct. 3, 2006) stating that the real issue is "whether Plaintiffs could ***reasonably be expected*** to travel interstate . . . ." (emphasis added)); Johnson v. Hix Wrecker Serv., No. 1:08-cv-50-WTL-JMS, 2009 U.S. Dist. LEXIS 51298 at *4 (S.D. Ind. June 18, 2009) ("jurisdiction extends only to drivers who ***reasonably could be expected*** to make one of the carrier's interstate runs, and that means more than a remote possibility" (emphasis added)); Garza v. Smith Int'l, Inc.,

**Page 15 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

C-10-100, 2011 U.S. Dist. LEXIS 22869 at *17 (S.D. Tex. Mar. 7, 2011) ("the MCA exception applies . . . so long as the employee "can be ***reasonably expected*** to perform interstate transport" (emphasis added)).

After propounding the mere "possibility" standard, Defendants also incorrectly assert that "it is not the Plaintiff's actual experience during the employment that is determinative . . . ." Defs.' Br. 14, ECF No. 53.  In reality, "[w]hether the motor carrier exemption applies to an employee depends on the nature of both the employer's and employees' activities." Dauphin, 544 F. Supp. 2d 266 at 273; cf., Goldberg, 291 F.2d at 235 ("The District Court was in error in holding the employer's operations were controlling.  The test is the nature of the transportation performed by the employees."); accord, Cerutti, 777 F. Supp. 2d at 940 ("This court finds persuasive the rationale of the majority of other district courts . . . and concludes that under SAFETEA-LU an employee's activities are considered in determining whether or not he or she is subject to the authority of the Secretary of Transportation . . . .").  Even Defendants agreed in the earlier part of their Brief in Support of their Motion for Summary Judgment, stating that the MCA Exemption "depends both on the class to which the employer belongs and on the class of work involved in the employee's job."   Although the "reasonable expectation" standard is controlling, this does not foreclose an evaluation of the employee's actual individual experience. See Dauphin, 544 F. Supp. 2d 266 at 273; cf., Goldberg, 291 F.2d at  235; accord, Cerutti, 777 F. Supp. 2d at 940; see also, BIS 37–43, ECF No. 47 (citing numerous cases in which the employees' experience was evaluated).

**Page 16 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

Similarly, Defendants erroneously assert the MCA Exemption can be applied on "an enterprise basis as well as an individual basis." See Defs.' Resp. to Pls.' Mot. for Partial Summ. J. ("Defs.' Resp.") 10, ECF No. 63.   Defendants cite Allen for this proposition, but Allen does not stand application of the MCA Exemption on an "enterprise basis." See generally 755 F.3d at 282, 284.   Allen involved a group of employees called "Field Service Employees," or "FSEs." See id. at 282.   The FSEs argued that, instead of analyzing the character of their duties as a class of employees, the district court should have analyzed each FSE on an employee-by-employee or district-by-district basis.   See id. at 284–85 ("The parties only contest whether, in measuring the interstate activities of **this class of employees**, an 'employee-by-employee,' 'district-by-district,' or 'company-wide' analysis is appropriate." (emphasis added)).   The Fifth Circuit held that a company-wide analysis was appropriate.   Id. Citing to Songer, the Allen panel explained that the Fifth Circuit had already rejected the argument that each individual driver must be personally involved in interstate commerce, regardless of the class of work in which other drivers in the same pool perform.   See id. at 284–85 ("The drivers argued that . . . 'a driver must be personally engaged in interstate transportation to be exempt.'   A unanimous panel declined to adopt this argument, observing that the 'application of the MCA exemption to an employee []depends . . . on the *class* of work involved . . . .'" (citing Songer, 618 F.3d at 472 (quoting 29 C.F.R. § 782.2(a)).

Thus, the Fifth Circuit's approach in Allen is merely a reaffirmation of a longstanding principle with respect to the MCA Exemption:  The second element of the

**Page 17 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

MCA Exemption depends "on **_the class_** of work involved in the employee's job." 29 C.F.R. § 782.2. This is not to say, as Defendants claim, that the MCA Exemption may be applied on an "enterprise basis." After all, the MCA Exemption "depends **_both_** on the class to which [the] employer belongs **_and_** on the class of work involved in the employee's job." Id. (emphasis added). The two elements necessary to apply the MCA Exemption are stated with the conjunctive "and": "[The MCA Exemption] extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction... **_and_** (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." Id. (emphasis added) (citations omitted).

Defendants' emphasis on Allen, Songer, and Resch due to their outcomes is also misplaced because they lack several material facts that are applicable to this case. See generally, Allen, 755 F.3d 279; Songer, 618 F.3d 467; Resch, 2013 U.S. Dist. LEXIS 123438. None of these cases involved an employer that operated a dedicated fleet of trucks, recruited their employees to drive those trucks, and promised that, if the employees agreed to drive them, they would generally be driving only in their home state. See id. None of these cases included records showing that the plaintiffs' driving and routes were generally consistent with an agreement for the employees to drive only in one state. Id. No overall business circumstances in these cases corroborated any

**Page 18 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

evidence of an agreement or intent to assign the employees to drive local routes in one state.  See id.

Further, Defendants have failed to recognize the *de minimis* exception as its own independent doctrine as so many other courts and the relevant regulations do.  See BIS 33–43, ECF No. 47.

> 2.  At Least from the Beginning of the SLB Job in January of 2012 through Mid-July of 2013, Plaintiffs' Ordinary Duties, as a Class of SLB Drivers, Involved Only a Possibility of Interstate Driving, Not a Reasonable Expectation, and Plaintiffs' Actual Interstate Trips were *De Minimis*.

At least from the beginning of the SLB job in January of 2012 through mid-July of 2013, Plaintiffs' ordinary duties, as a class of SLB Drivers,[8] involved only a speculative possibility of interstate driving, not a reasonable expectation, and Plaintiffs' actual interstate trips were *de minimis*.[9]  Several material facts submitted by Plaintiffs lack any genuine dispute from Defendants, and therefore, these facts are established as a matter

---

[8]    Defendants incorrectly and erroneously assert in their Response that "Plaintiffs are seemingly bent on the idea that Defendants are burdened with demonstrating that each Plaintiff as an individual driver fulfilled the motor carrier exemption's interstate travel requirement."  Defs.' Resp. 13. This straw-man argument does not dignify its own paragraph in the main text of this Reply.  Plaintiffs have consistently asserted their rights as a unique class or pool of SLB Drivers within T&T from the beginning of this case and throughout their recent briefing.  Plaintiffs have never argued that this Court should look at each Plaintiff, one at a time, to the exclusion of each other Plaintiff.  The only individualized review Plaintiffs have sought is through their request for this Court to recognize and apply a public policy exception.  In that instance, the proposed policy exception necessitates an individual review, because it is narrowly tailored to apply only to Plaintiffs who Defendants actually influenced to violate DOT regulations.

[9]    As a preliminary matter, Plaintiffs do not dispute that T&T meets the first element of the MCA Exemption.  That is, T&T is a carrier "whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under Section 204 of the Motor Carrier Act," or a "Commercial Motor Carrier.  See 29 C.F.R. § 782.2(a).  The dispute is over whether Plaintiffs were in a class of employees who engaged "in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act."  See id.  However, although SLB has incorporated T&T's arguments on the applicability of the MCA Exemption, it has failed to set forth any of its own facts or arguments showing that it was a Commercial Motor Carrier.  SLB cannot simply incorporate T&T's facts to say that SLB is a Commercial Motor Carrier.

**Page 19 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

of law.  <u>See</u> Fed. R. Civ. P. 56(c)(1)(A)–(B).  First, Defendants have failed to genuinely dispute any of Plaintiffs' testimony regarding each of their conversations with various T&T agents about the terms and conditions of the SLB Driver job.  All of these conversations include a statement from a T&T agent, and superior to Plaintiffs, that SLB Drivers were expected to ordinarily stay in Arkansas.  <u>See</u> BIS 44–49.  Defendants have failed to produce any declarations from any of Plaintiff's superiors that the conversations did not occur.  This establishes, as a matter of law, an agreement that Plaintiffs would not reasonably be expected to drive in interstate commerce.

Defendants have also failed to genuinely dispute facts that show, as a matter of law, that the parties acted in accordance with their agreement that SLB Drivers would ordinarily be expected to drive in Arkansas.  Defendants have provided no additional evidence showing that Plaintiffs actually drove out of the State of Arkansas more times than what was established by their testimony and the E-Journey records from the beginning of the SLB Driver job through mid-July of 2013.  <u>See</u> Ex. 32 (summarizing Plaintiffs' testimony regarding how many times they actually drove out of state); <u>see also</u>, BIS 51–54.  Their testimony and records showed that, through mid-July of 2013, Plaintiffs drove out of state as SLB Drivers between 0% and 1% of their entire days in an SLB truck.  <u>See</u> <u>id</u>.  These facts are therefore established as a matter of law as well.  Thus, the two conclusions this Court must draw are (1) that the parties acted in accordance with their expectations that Plaintiffs were intended to ordinarily drive local routes in Arkansas; and (2) the actual number of trips out of state were *de minimis*.

**Page 20 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

Defendants have also failed to genuinely dispute that, from January of 2012 through mid-July of 2013, Plaintiffs drove out of state as SLB Drivers only if the purpose also involved something other than their primary purpose of hauling fracking sand to oil wells. See BIS 52–53.[10]  During this period, some Plaintiffs drove out of the State of Arkansas only if the clear and undisputed purpose also involved inspections, fleet additions, or equipment moves, see id.,[11] but never for the bare purpose of hauling sand to wells.  (And some Plaintiffs did not leave the state at all.)  Again, this Court must view this as evidence corroborating the parties' agreement for SLB Drivers to ordinarily stay in Arkansas and establishing the *de minimis* exception.

Thus, although Defendants have the substantive burden of proof on the MCA Exemption, Plaintiffs procedurally negated Defendants' MCA Exemption defense as a matter of law pursuant to Rule 56.  Under Rule 56, the burden shifted to Defendants, as the non-movants, "to produce sufficient evidence to support a verdict in his favor based on more than speculation, conjecture, or fantasy."  Ely v. Dolgencorp, LLC, 827 F. Supp. 2d 872, 879–80 (E.D. Ark. 2011) (quotations and citations omitted).

However, Defendants have failed to meet this burden.  The evidence must be "viewed in the light most favorable to the non-moving party only if there is a 'genuine'

---

[10]    While some Plaintiffs returned to Arkansas from the Texas truck inspections with sand, they went down to Texas empty and, nevertheless, went down only because the trucks needed to be inspected.  The inclusion of sand on the return trip, therefore, was only incidental to the main purpose of the trip, inspections.

[11]    See Pritchett, 2013 U.S. Dist. LEXIS 121430 at *26–27  (holding that the plaintiff drivers were not "likely" to be called upon to drive interstate "from time to time," where *inter alia*, "the cause of the trips [involved] []a fluky plant shortage[]").

**Page 21 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

dispute as to those facts." Id. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

Defendants have failed to set forth any material evidence or arguments that would create or support a genuine dispute. First, on multiple occasions in their Brief in Support of their Motion for Summary Judgment, Defendants fatally argue that Plaintiffs had the "possibility" of driving in interstate commerce. See Defs.' Br. 17 ("there were numerous business purposes for which Plaintiffs *could have been called upon* to travel interstate (emphasis added), 17–18 ("deposition transcript testimony of the Plaintiffs themselves firmly established . . . the '*possibility*' of interstate travel required to invoke successfully the MCA exemption" (emphasis added)); Defs.' Resp. 14 ("Plaintiffs *could have been assigned* to drive interstate . . . .").

Joey Griffis's sworn declaration suffers from the same problem; it states a mere possibility of interstate driving, not a reasonable expectation.  Griffis claims that "[d]uring the time that Plaintiffs were driving SLB trucks they *could be assigned* at any time, *if available*, to also drive a T&T truck interstate . . . ."  Declaration of Joey Griffis ("Griffis Decl.") 2, ¶ 16, ECF No. 49-4 (emphasis added).

This statement is akin to the defendant's statement in Phillips, which was that "[a]ny of the . . . drivers . . . *could have been and can be* called upon to drive their assigned truck over public highways that cross state lines."  Op. and Order at 4, Phillips, No. 4:11CV00776-JLH, filed in this case as ECF No. 10-2 (emphasis added).  As in

**Page 22 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

<u>Phillips</u>, Griffis merely states that Plaintiffs "could be assigned," which avers only a possibility.  Griffis's statement further solidifies the mere possibility of interstate driving, and thus lack of expectation, by qualifying and limiting the instances in which Plaintiffs could drive interstate routes to times when they were available and assigned to a T&T truck.  Griffis Decl. 2, ¶ 16.

The one statement that goes beyond a mere possibility is not admissible in evidence, and cannot be used to deny partial summary judgment to Plaintiffs.  <u>See</u> Fed. R. Civ. P. 56(c)(2), (4) (requiring statements in declarations to be presented in a form that would be admissible in evidence).  Bill Smith states as follows:  "[a]ll T&T drivers were likely to be called upon at any time to drive a T&T truck, interstate or intrastate, even if they were also assigned to drive a Schlumberger truck."  Smith Decl. 2, ¶ 7, ECF No. 63-1.  This statement is inadmissible opinion testimony by a lay witness.  <u>See</u> Fed. R. Evid. 701 (requiring opinions to be rationally based on the witness's perception). Smith avers that all T&T drivers are "likely" to be called upon to drive a T&T truck, which makes this statement lay opinion testimony.  Fatally, Smith does not disclose any perceptions upon which his opinion may be based.  He does not refer to any statistics or any other facts to suggest how he came to the opinion that it was likely for an SLB Driver to be asked to drive a T&T truck.  Defendants have submitted no other evidence from which this Court might even assume that he used to form this opinion.

In reality, the reason Smith has no facts upon which to base his opinion is because, statistically speaking, it was highly unlikely for any Plaintiff to be asked to drive a T&T truck while designated as an SLB Driver, much less, to drive out of state in a T&T

**Page 23 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

truck.[12]  No Plaintiffs ever drove out of Arkansas on the few occasions they did drive a T&T truck while designated as SLB Drivers.[13]

Defendants also set forth two arguments with contradictory assumptions that further show a lack of a genuine dispute over the fact that SLB Drivers were not expected to drive across state lines as part of their ordinary job duties.  To summarize, on the one hand, Defendants impliedly argue that Plaintiffs were separately designated as SLB Drivers, by claiming that Plaintiffs could have been called upon to drive T&T trucks, and therefore, could have driven in interstate commerce.  On the other hand, Defendants impliedly argue that SLB Drivers were not separately designated, arguing that T&T indiscriminately assigned interstate routes to all "T&T drivers," lumping SLB Drivers and T&T Drivers together as though no differences between the two classes of drivers existed.

---

[12]       During the entire time in which Alexander was designated as an SLB Driver, Alexander drove a T&T truck on only two to three occasions.  Alexander Dep. 46:22–24.  He drove the T&T truck only if the well went down.  Alexander Dep. 46:25–47:6.  During the entire time in which Collum was designated as an SLB Driver, Collum drove in a T&T truck only one time.  Collum Dep. 41:13–23.  He did not drive out of state, and he drove the T&T truck on his normal day off because they needed an extra driver.  Id.  Davis drove a T&T truck on a few occasions while designated as an SLB Driver for the purpose of moving SLB equipment from the staging pad to the well site.  See Davis Dep. 62:15–63:11.  Houpt drove a T&T truck just a few times.  Houpt Dep. 31:19–24.  Pritchard drove a T&T truck for three weeks to a month, only because his well was not running.  Prtichard Dep. 67:7–68:1.  But after that time, Pritchard explained as follows:  "[W]e had a little meeting and Mr. Stovall said that -- told us that we're not -- we wasn't supposed to been in a Tutle truck; we was supposed to only be in Schlumberger only.  So we didn't -- after that we didn't go back in the Tutle trucks."  Id.  Howland drove a T&T truck only two or three times while designated as an SLB Driver.  83:25–84:21.  He never drove out of state on these few occasions, and only moved empty trailers from the well site back to the T&T's Morrilton yard.  Id.  Schroeder T&T trucks on only two occasions while designated as an SLB Driver.  Schroeder Dep. 96:18–97:8.  Both times were in Arkansas and merely for the purpose of moving empty trailers from the staging pad to the yard, not hauling sand.  Schroeder Dep. 97:5–8.  Phillips drove a T&T truck while designated as an SLB Driver for only four days during one week.  Phillips Dep. 57:10–58:8.

[13]       See id.

**Page 24 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

For the first argument—that Plaintiffs could have driven interstate while they were designated as SLB Drivers because they could have driven T&T trucks—Griffis says this: "[d]uring the time that Plaintiffs were driving SLB trucks they could be assigned at any time, if available, to also drive a T&T truck interstate . . . ."  Griffis Decl. 2, ¶ 16.  Bill Smith echoes this statement in his third declaration: "All T&T drivers were likely to be called upon at any time to drive a T&T truck, interstate or intrastate, even if they were also assigned to drive a Schlumberger truck."   Smith Decl. 2, ¶ 7, ECF No. 63-1.  Defendants' implied argument here is this: "T&T trucks could drive out of state, Plaintiffs could be assigned to T&T trucks, and therefore, Plaintiffs could drive out of state."

Aside from the implication that SLB Drivers were separately designated from other T&T Drivers, these statements also show that the SLB trucks and SLB Drivers were generally intended to stay in Arkansas and not drive interstate routes.   If SLB Drivers were generally expected to drive interstate routes in SLB trucks, Defendants would have no reason to make the point that SLB Drivers could have been assigned **_to T&T trucks_** to drive interstate routes.

Defendants also make the second argument, which contains underlying assumptions SLB Drivers were not a separate pool of drivers, even though T&T has already admitted that Plaintiffs were separately designated to haul frack sand primarily in SLB trucks, <u>see</u> T&T's Answ. ¶ 62, ECF No. 25.  Defendants extensively talk about T&T Drivers together with SLB Drivers, in an attempt to avoid the fact that T&T recognized the SLB Drivers as a separate group of drivers.  For example, Defendants state that "T&T drivers are clearly exempt drivers."   Defs.' Br. 16.   Again, they state

**Page 25 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

"Plaintiffs . . . were drivers for T&T, an interstate trucking company."  Defs.' Br. 16.  And again, they state "the record in this case establishes that T&T drivers are 'Drivers' in 'interstate commerce.'"  Defs.' Br. 17.  Griffis's and Smith's declarations state that "T&T employ[s] approximately 520 drivers, who may be called upon at any time, if available, . . . to drive in interstate commerce."  Griffis Decl. ¶ 3; Smith Decl. ¶ 20, ECF No. 53-1.  Smith claims that T&T indiscriminately assigned the routes on which "T&T drivers" drove, without distinguishing between SLB Drivers and T&T Drivers.[14]  See Smith Decl. 1–2, ¶ 6, ECF No. 63-1.

Pursuant to McComb's rule requiring indiscriminate assignment of interstate trips among a single pool of drivers, see 332 U.S. at 433, T&T intends these statements to imply that the SLB Drivers were part of one large pool of T&T drivers and that, because T&T sent its drivers on many interstate trips, SLB Drivers were reasonably expected to drive in interstate commerce.

However, the fact that Defendants make both of these arguments at the same time shows the lack of a *genuine* dispute over the fact that Plaintiffs were not reasonably expected to drive in interstate commerce.  If SLB Drivers were actually part of the same pool of drivers as all other T&T Drivers to which interstate routes were indiscriminately assigned, then Defendants would have no genuine reason to also declare that Plaintiffs could have driven a T&T truck interstate.  This is because, as to

---

[14]     Although he mentions "Schlumberger trucks," he nonetheless fails to distinguish between SLB Drivers and T&T Drivers, in an attempt to imply that they are all part of one pool of drivers.

Further, similar to his statement that SLB Drivers could have been assigned to drive T&T trucks interstate, this statement is inadmissible lay opinion testimony.

**Page 26 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

the sharing of interstate trips,[15] indiscriminate assignment of those interstate trips among a single class of drivers is enough for the MCA Exemption to apply.  See McComb, 332 U.S. at 433 (holding that the MCA Exemption only applies where (1) the interstate services rendered by the employer are "distributed generally throughout the year," (2) "the performance of [those interstate] services [are] shared indiscriminately" by the drivers, and (3) the interstate trips are "a natural, integral, and . . . inseparable part of the common carrier service of the employer and the drivers" such that the drivers are "likely to be[] called upon in the ordinary course of [their] work to perform" interstate safety-affecting activities).  If the McComb circumstances were present in this case, it would not matter whether Plaintiffs could have, or could not have, been assigned to drive a T&T truck.  Yet, Defendants' go out of their way to claim that Plaintiffs, as SLB Drivers, could have been assigned at any time to a T&T truck, and therefore, could have driven interstate.

Even setting aside the paradoxicality of the assumptions in those arguments, T&T's body of evidence fails to show indiscriminate assignment of interstate trips to SLB Drivers similar to how it fails to show reasonable expectation.  Griffis's statement affirmatively weighs against a finding that T&T indiscriminately assigned interstate routes among all its drivers.  Again, Griffis states that "[d]uring the time that Plaintiffs were driving SLB trucks they *could be assigned* at any time, *if available*, to also drive a *T&T truck* interstate . . . ."  Griffis Decl. 2, ¶ 16.  The plain language of this statement

---

[15]   Meaning those interstate trips that are a natural and inseparable part of the employer's business and that are that are distributed generally throughout the year.

**Page 27 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

shows that T&T did not indiscriminately assign the interstate routes; rather, it discriminately assigned Plaintiffs to occasionally drive a T&T truck only when Plaintiffs were available. See id.

Smith's declaration on this subject is just as failing as Griffis's. See Smith Decl. 1–2, ¶ 6, ECF No. 63-1. Smith—wearing his SLB-Drivers-and-other-T&T-Drivers-are-one-big-pool hat—states that T&T dispatchers indiscriminately assigned interstate routes to "T&T drivers." Again, this declaration statement is inadmissible opinion testimony. See Fed. R. Evid. 701 (requiring opinions to be rationally based on the witness's perception). Defendants offer no records or other observations upon which Smith bases his conclusions and upon which Smith could rationally make such a statement.

Again, the reason that Smith has not, and cannot, produce any evidence that would rationally support his observation is because, in reality, no indiscriminate assignment of interstate routes occurred among SLB Drivers and T&T Drivers. T&T's own statements bear this out. Smith confidently asserts that "T&T's revenue is 100% attributable to interstate transportation services."[16] T&T has consistently touted how often their drivers drive in interstate commerce, hauling frack sand and other materials. See Smith Decl. 1–2, ¶¶ 4–12, ECF No. 8-2. If T&T engaged in as much volume of interstate hauling of frack sand as it says, and if T&T indiscriminately assigned and

---

[16] Again, this is inadmissible opinion testimony. He does not explain what he means by "interstate transportation services." For all we know, he could merely be making an argument about the "practical continuity" doctrine, which is also inapplicable to this case for various reasons. See Pls.' Resp. to T&T Defs.' Mot. for Summ. J. 63–65, ECF No. 60.

**Page 28 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

generally distributed all this interstate activity among all its drivers throughout the year, then the evidence should reflect that.  Yet, Plaintiffs, as SLB Drivers, all drove out of state 1% or less for a year-and-a-half prior to mid-July of 2013.  <u>See</u> Ex. 32. Defendants cannot produce any evidence that would establish indiscriminate and generally distributed assignment of interstate runs, given T&T's claim of extensive interstate sand-hauling with Plaintiffs' 1% or less days in other states as SLB Drivers. This is exactly why, notably, T&T has failed to produce any records or evidence of how many total interstate trips were assigned to both SLB Drivers and T&T Drivers during the relevant time.

In any event, Plaintiffs' undisputed fact evidence affirmatively shows that T&T designated Plaintiffs into a separate pool of drivers and that both Plaintiffs and Defendants expected SLB Drivers to stay within the State of Arkansas.  <u>See</u> Pls.' Resp. 44–60, ECF No. 60; BIS 43–57, ECF No. 47; Ex. 32.

Defendants also imply the fallacious argument that, because the Master Service Agreement ("MSA") lacked any geographic restrictions, Plaintiffs necessarily could have driven out of state. <u>See</u> Decl. of Willder Briceno ¶¶ 4–6, ECF No. 63-2 (stating that the MSA applied to North America, Canada, and Alaska); <u>see also</u> Smith Decl. ¶ 4, ECF No. 63-1 (stating that the MSA was not state specific).

The MSA does not foreclose the Defendants from later limiting the use of the SLB trucks ordinarily to particular geographic areas.  Defendants' implied argument assumes that all understandings as to how and where the SLB trucks were expected to be used for any discrete period of time are recorded in the MSA.  No evidence suggests

**Page 29 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

that the MSA prohibits the Defendants agreeing to limit the use of the SLB trucks to particular geographic areas for particular purposes and discrete periods of time. Plaintiffs' undisputed evidence shows that, starting in January of 2012, T&T and SLB intended to use the SLB trucks in Arkansas, which actually occurred primarily through mid-July of 2013. Appeals to the MSA's silence on this issue cannot undermine the fact that T&T consistently told Plaintiffs that they would stay in Arkansas and that Plaintiffs actually did, in the ordinary course of their duties, stay in Arkansas for over a year-and-a-half.

In sum, it is clear and undisputed that Plaintiffs, as SLB Drivers, were a distinct pool of drivers who were not expected to regularly drive across state lines as part of their ordinary job duties,[17] and the relationship between Plaintiffs' primary duties and "interstate commerce" was *de minimis*.[18]   BHP purchased Chesapeake's Arkansas

---

[17]         As stated by the relevant regulations and cases, drivers must be "***likely*** to be[] called upon in the ***ordinary*** course of [their] work to perform, either regularly or from time to time," interstate safety-affecting activities.   29 C.F.R. § 782.2(b)(3); see also, Morris, 332 U.S. at 433 (holding drivers exempt where, *inter alia*, their interstate trips were "a natural, integral and apparently inseparable part of the common carrier service of the [employer] and of his drivers"); Masson, 2005 U.S. Dist. LEXIS 18022 at *24 ("Driving in interstate commerce alone does not trigger the motor carrier exemption. ***Such driving, however frequent, must have been an expected and regular part of an employee's job duties.***" (emphasis added)); Flowers, 535 F. Supp. 2d at 770 ("the motor carrier exemption will not relieve an employer of all FLSA overtime obligations if driving in interstate commerce is not a ***regular and expected part of an employee's duties***").   Put another way, jurisdiction does not even attach, "if the possibility of interstate driving is remote." Op. and Order at 4, Phillips, No. 4:11CV00776-JLH, filed in this case as ECF No. 10-2 (citing Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37.902, 37.903 (July 23, 1981).   The court carefully Id.

[18]         See Flowers, 535 F. Supp. 2d at 770 (noting that, although employees need not engage in a substantial volume of interstate activity, the volume of interstate activity must nonetheless be more than *de minimis* to trigger the MCA Exemption); see also, Seagram, 2014 U.S. Dist. LEXIS 148721 at *16–17 (denying employer's motion to dismiss where there was a factual dispute over whether the employee's transport duties "involved sufficient interstate commerce or whether instead his involvement was only *de minimis*"); Barrios, 2013 U.S. Dist. LEXIS 175155 at *18–20 (denying summary judgment to employer where evidence suggested that the plaintiffs were assigned to semi-permanent, ***intrastate*** routes); Pritchett, 2013 U.S. Dist. LEXIS 121430 at *26–27 (holding that, where "the amount of interstate

**Page 30 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

shale oil assets, Schlumberger agreed to frack them, and T&T agreed to provide the drivers and assign them to a special dedicated fleet of SLB trucks.  Consistent with this arrangement, Defendants told Plaintiffs that SLB Drivers were intended to stay in Arkansas, and Plaintiffs accepted the SLB Driver job openings in reliance upon those representations.  Some Plaintiffs testified that they took a pay cut to take the SLB Driver job.  Others testified that they quit when they found out that would likely be driving cross-country again because the SLB trucks were being reassigned to Oklahoma.  The SLB trucks had relatively small sleepers not designed for long-haul interstate trips.

Further, the rarity of and purposes for Plaintiffs' interstate travel is indicative of both the *de minimis* connection between Plaintiffs' duties and interstate commerce and

---

travel (four short trips in over three years), the timing of the trips (confined to a single week), the cause of the trips (a fluky plant shortage) and the distribution of the assignment (a single driver making ¾ of the trips," the plaintiff drivers were not "likely" to be called upon to drive interstate "from time to time"); Hoffman v. First Student, Inc., 2009 U.S. Dist. LEXIS 53542 at *19–20 (denying summary judgment to employer where the plaintiffs worked "fewer than two interstate trips per year" during the relevant time); Dauphin, 544 F. Supp. 2d at 275 ("for the motor carrier exemption from the FLSA to apply, defendants here must establish either that the activities of the individual plaintiffs involved interstate travel of a character that was more than de minimis or that interstate travel was a 'natural, integral and . . . inseparable part' of the position plaintiffs held [sic]) (citing McComb, 332 U.S. at 433)); Masson, 2005 U.S. Dist. LEXIS 18022 at *23 ("where the employer's interstate activities affecting the safety of interstate motor operations are de minimis, the employer's exemption from FLSA requirements under the MCA consequently fades [sic]" (internal quote marks omitted)); Op. and Order at 4, Phillips, No. 4:11CV00776-JLH, filed in this case as ECF No. 10-2 (noting that jurisdiction by the DOT does not attach, and therefore, the MCA Exemption does not apply, "if the possibility of interstate driving is remote") (citing Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37.902, 37.903 (July 23, 1981); Lieberman, 2005 U.S. Dist. LEXIS 45222 at *5 ("If the employer or employee's involvement in interstate commerce could be characterized as de minumus, they may not be subject to the Secretary of Transportation's jurisdiction at all, and thus are not covered by the Motor Carrier Act." [sic]); Dole, 738 F. Supp. at 1322 ("a driver is not exempt under the Motor Carrier Act merely because he takes one or two interstate trips"); Kimball, 504 F. Supp. at 547–48 (holding that MCA Exemption did not apply where only 0.17% trips were interstate, the interstate trips were not shared indiscriminately among all the drivers, and the interstate trips were made, on average, once every three weeks); Coleman, 324 F. Supp. at 668–71 (S.D. Ala. 1970), aff'd regarding de minimis exception to MCA Exemption at, 458 F.2d 1139 (5th Cir. 1971) ("the court does not feel constrained to allow [the MCA] exemption . . . on the basis of a minimum of evidence of interstate activity which is minimal in its scope and minimal in its nature").

**Page 31 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

Plaintiffs' and Defendants' expectations that SLB Drivers were intended primarily to haul frack sand in Arkansas. Plaintiffs' primary duty was to haul frack sand to shale oil wells, and for a year and a half after the start of the SLB Driver job, each Plaintiff drove out of state approximately between 0% and 1% while they were designated as SLB Drivers from January of 2012 through mid-July of 2013.[19] Also, through mid-July of 2013, Plaintiffs drove out of the State of Arkansas only if the purpose involved inspections, fleet additions, or equipment moves,[20] but never for the bare purpose of hauling sand to wells. In other words, Plaintiffs drove out of state only if the purpose also involved something other than their primary duty of hauling fracking sand to oil wells in Arkansas.[21]

Finally, even if, *arguendo*, this Court were to conclude that Defendants burden is to show **either** (1) reasonable expectation of interstate driving, **or** (2) actual, non-*de*

---

[19]     *Cf.* Kimball, 504 F. Supp. at 547–48 (holding that MCA Exemption did not apply where only 0.17% trips were interstate, the interstate trips were not shared indiscriminately among all the drivers, and the interstate trips were made, on average, once every three weeks); Coleman, 324 F. Supp. at 668–71 (S.D. Ala. 1970), aff'd regarding de minimis exception to MCA Exemption at, 458 F.2d 1139 (5th Cir. 1971) ("the court does not feel constrained to allow [the MCA] exemption . . . on the basis of a minimum of evidence of interstate activity which is minimal in its scope and minimal in its nature"); see also, Flowers, 535 F. Supp. 2d at 770 (noting that, although employees need not engage in a substantial volume of interstate activity, the volume of interstate activity must nonetheless be more than *de minimis* to trigger the MCA Exemption).

[20]     See Pritchett, 2013 U.S. Dist. LEXIS 121430 at *26–27 (holding that the plaintiff drivers were not "likely" to be called upon to drive interstate "from time to time," where *inter alia*, "the cause of the trips [involved] []a fluky plant shortage[]).

[21]     While some Plaintiffs returned to Arkansas from the Texas truck inspections with sand, they went down to Texas empty and, nevertheless, went down only because the trucks needed to be inspected. The inclusion of sand on the return trip, therefore, was only incidental to the main purpose of the trip, inspections.

**Page 32 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

*minimis* interstate driving, the result is the same.[22]   The undisputed facts discussed above show that neither circumstance was true through mid-July of 2013.

For these reasons, this Court must hold that the MCA Exemption does not apply to Plaintiffs, as SLB Drivers, until the time when each individual Plaintiff went on temporary assignment to Oklahoma and Texas, if at all, in mid-July of 2013.

> 3.      Plaintiffs Who Were Still Working as SLB Drivers in Mid-July of 2013 Were Not Expected to Regularly Drive in Interstate Commerce Through the End of the SLB Driving Job Position, Despite a Temporary Assignment to Oklahoma and Texas.

Plaintiffs simply incorporate the arguments on this point from their BIS 57–59, ECF No. 47.

## B.      Alternatively, The MCA Exemption Also Cannot Apply to Certain Plaintiffs in this Case Because T&T Undisputedly and Intentionally Undermined the Public Policy Goals of the MCA Exemption.

Alternatively, the MCA Exemption also cannot apply to certain Plaintiffs in this case because T&T undisputedly and intentionally undermined the public policy goals of the MCA Exemption.  Plaintiffs incorporate the arguments on this issue from their BIS. BIS 60–63, ECF No. 47.

The material facts on this issue are undisputed.  Plaintiffs Alexander, Grimes, Davis, Phillips, Schroeder, Houpt and Howland all testified to the compulsion and encouragement that T&T's put on them to work in excess of DOT limits or falsify their log books.  See Alexander Dep. 97:13–98:2, 99:24–101:10; Grimes Dep. 48:7–51:4, Grimes Dep. 5:21–7:3, Mar. 30, 2015; Davis Dep. 45:5–46:22; Houpt Dep. 51:18–52:17;

---

[22]      Plaintiffs argue that Defendants must prove both.  See Section V.A.1.b, *supra*.

Page 33 of 42
Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.
U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM
Reply in Support of Motion for Partial Summary Judgment

Phillips Dep. 79:16–81:23, 97:17–99:13; Schroeder Dep. 29:22–49:21; Howland Dep. 40:10–41:5, 41:14–42:15, 64:16–65:20.   Plaintiffs specifically named Billy Vest, Mike Stovall, and Heaven Porter as those agents.   Neither Billy Vest, Mike Stovall, Heaven Porter nor anyone else with knowledge have submitted declarations disputing Alexander's, Grimes's, Davis's, Houpt's, Phillips's, Schroeder's or Howland's testimony regarding T&T's efforts to have them work in excess of weekly limits.   Although some Plaintiffs testified that they were not subjected to such treatment, those Plaintiffs do not ask this court to apply the public policy exception to themselves.   In any event, this does not negate the other Plaintiffs' testimony that they were subjected to such treatment. See id.

Therefore, this Court should apply a public policy exception to the MCA Exemption to Plaintiffs Alexander, Grimes, Davis, Phillips, Schroeder, Houpt and Howland.   T&T undermined the policy objectives of the MCA Exemption and the DOT's regulations, and therefore, should not be allowed to obtain their benefits.   In the alternative, this Court should estop T&T from asserting the MCA Exemption as to Alexander, Grimes, Davis, Phillips, Schroeder, Houpt and Howland for the same factual reasons discussed above.

## C.    Defendants Have Failed to Present Sufficient Evidence of the Good Faith Defense to Avoid Summary Judgment.

Defendants have failed to present sufficient evidence of the Good Faith Defense to avoid summary judgment.   Section 10 of the Portal-to-Portal Act, provides an employer with a complete defense to liability for overtime violations.   29 U.S.C.S. § 259 (LEXIS 2015).   An employer must prove the following three interrelated elements: (1)

**Page 34 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

that its actions were taken in actual conformity with "any written administrative regulation, order, ruling, approval, or interpretation" of the Wage and Hour Administrator "or any administrative practice or enforcement policy [of the Administrator] with respect to the class of employers to which he belonged" while that ruling or policy was in effect; (2) that its actions were taken in reliance on that ruling or policy; and (3) that it acted in good faith.  See 29 U.S.C.S § 259(a), (b), (b)(1); see also, 29 C.F.R. §§ 790.13–19 (LEXIS 2015).

However, Section 10 was not designed to allow an employer to insulate itself from liability for the consequences of its own improvident or mistaken interpretation of a statute.  See, e.g., EEOC v. Home Ins. Co., 672 F.2d 252, 266 (2d Cir. 1982).  Further, the Section 10 Defense is established only if the administrative interpretation that is relied on by an employer provides a clear answer to the employer's particular situation. Horan v. King Cnty., 740 F. Supp. 1471, 1481 (W.D. Wash. 1990); see also, Cole v. Farm Fresh Poultry, Inc., 824 F.2d 923, 927 (11th Cir. 1987) ("while the Bulletin itself provides some examples pertinent to particular situations, no specific guidance is provided for the situation at bar"); West v. Anne Arundel Cnty, 3 WH Cases2d 234, 246–47 (D. Md. 1996); Renfro v. Emporia, 732 F. Supp. 1116, 1119 (D. Kan. 1990) ("The court finds that the guidelines and illustrative applications contained in the regulations cited by defendant are too general to support a section 259 defense in this case."). "Where an administrative interpretation is insufficient to allow objective reliance the reliance prong of the section 259 defense cannot be met; an employer's actual reliance upon his own incorrect interpretation of a vague and general administrative guideline

**Page 35 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

will not suffice." Cole, 824 F.2d at 927.  Otherwise, "section 259 would mean that any employer could establish a good-faith defense simply by showing that it 'relied' on a general administrative guideline that provided no opinion regarding the employer's particular situation." Id. at 928.

T&T's assertions of good faith are too generalized and vague to allow for the Section 10 Defense in this case.  See T&T Resp. 16–17, ECF No. 63.  None of the materials speak to the particular situation here.  See id.  To rely on these materials, T&T would have had to use its own interpretations.  See id.  The Field Operations Handbook is a thirty-nine page document with guidelines covering a wide range of situations in which the MCA Exemption could be applicable, yet, T&T has not pointed to any particular section upon which they relied.  See Smith Decl. 4–5, ¶ 40, ECF No. 8-2 (citing http://www.dol.gov/whd/FOH/FOH_Ch24.pdf); Griffis Decl. 3–4, ¶ 29,  ECF No. 49-4.

Furthermore, Separate Defendant SLB has not produced any evidence at all to support a claim to the Good Faith Defense.

## VI.    PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF THE CALCULATION OF DAMAGES.

Plaintiffs are entitled to partial summary judgment on the issue of the calculation of damages.  Plaintiffs' incorporate their arguments on this issue from their BIS, but also add discussion about Defendants' claim about the day-rate.  In sum, Plaintiffs seek summary judgment that Plaintiffs' regular rate and overtime rate are calculated based upon a 60 hour workweek and that the Fluctuating Work Week method ("FWW") and the

**Page 36 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

Day-Rate method of calculating damages do not apply, for at least the period of time in which Plaintiffs were paid a weekly salary.

**A.    Plaintiffs' Regular Rate and Overtime Rate are Calculated Based upon a 60 Hour Workweek and the Fluctuating Work Week Method and Day-Rate Method of Calculating Damages Do not Apply, for at least the Period of Time in which Plaintiffs were Paid a Weekly Salary.**

Plaintiffs' regular rate and overtime rate are calculated based upon a 60 hour workweek and the Fluctuating Work Week method and the Day-Rate method of calculating damages do not apply, for at least the period of time in which Plaintiffs were paid a weekly salary.  Section 1 incorporates Plaintiffs' legal arguments from their BIS, but also adds the relevant law on calculating damages under the Day-Rate method in light of Defendants' point that Plaintiffs' salaries changed from a weekly salary to a day-rate.  Section 2 explains why this Court must calculate Plaintiffs' regular rate and overtime rate based upon the 60 hour workweek and, accordingly, why the FWW and the Day-Rate method do not apply for at least the time in which Plaintiffs were paid on a weekly salary.

1.    If an Employee is Employed Solely on a Weekly Salary Basis, the Regular Hourly Rate of Pay, on which Time and a Half Must Be Paid, Is Computed by Dividing the Salary by the Number of Hours which the Salary Is Intended to Compensate.

"If [an] employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."[23]   29 C.F.R. §

---

[23]    This means that the regular rate is determined, in part, upon the employment agreement of the parties.  See id.

**Page 37 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

778.113 (LEXIS 2015).  Plaintiffs incorporate the law statements on this issue from their

BIS.

Additionally, it is clear that the regulations also contemplate the situation where

the employer paid a misclassified employee a Day-Rate:

> If the employee is paid a flat sum for a day's work or for doing a particular
> job, without regard to the number of hours worked in the day or at the job,
> and if he receives no other form of compensation for services, his regular
> rate is determined by totaling all the sums received at such day rates or
> job rates in the workweek and dividing by the total hours actually worked.
> He is then entitled to extra half-time pay at this rate for all hours worked in
> excess of 40 in the workweek.

29 C.F.R. § 778.112 (LEXIS 2015).  Similar to the FWW method, the Day-Rate method

determines the overtime rate based on half-time.  See id.

2.      For the Period of Time that T&T Paid Plaintiffs a Weekly Salary while
        Designated as SLB Drivers, each Plaintiff's Weekly Salary was Intended to
        Compensate each Plaintiff for 60 Hours Per Week.

For the period of time that T&T paid Plaintiffs a weekly salary while designated as

SLB Drivers, each Plaintiff's weekly salary was intended to compensate each Plaintiff

for 60 hours per week.  See Alexander Dep. 25:13–26:6 (explaining that T&T told him

that the SLB Driver job would be $1,400.00 per week, five days per week, twelve hours

per day); Davis Dep. 28:25–29:4; (same); Utley Dep. 37:10–14 (same); Houpt Dep.

32:16–23 (explaining that T&T told him that the SLB Driver job would be $1,200.00 per

week, five days per week, twelve hours per day); Phillips Dep. 27:10–28:5 (five, twelve

hour days); Schroeder Dep. 77:19–23 (same); Howland Dep. 45:14–17 (same); see

also Pritchard Dep. 53:25–54:6 ($1,400.00 per week, five days per week); McNeal Dep.

**Page 38 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

28:14–17 (same).  T&T consistently told Plaintiffs that the SLB Driver job paid $1,400.00 per week for five days per week and twelve hours per day.  See id.

Plaintiffs incorporate all the fact and arguments from their BIS on this issue. Also, Defendants have failed to dispute the testimony cited in the preceding paragraph that the weekly salary, as long as it was in place, was intended to compensate Plaintiffs for 60 hours per week.  Thus, the fact that Plaintiffs' weekly salary was intended to compensate them for 60 hours per week is established as a matter of law.

However, Defendants have pointed out that the weekly salary was eventually changed to a day-rate at some unknown point in time.  See Smith Decl. 4, ¶ 32, ECF No. 8-2.  Unfortunately, Defendants' Response lacks any precise arguments showing when T&T implemented the day-rate, merely parroting Plaintiffs' confused and confusing deposition testimony on the subject.   The only evidence that either Defendant has submitted in the record is Smith's first declaration, which states merely this:  "[SLB Drivers] were paid a flat weekly rate of $1,400.00, which was ***eventually converted*** to a flat daily rate of $264.00 per day."  Smith Decl. 4, ¶ 32, ECF No. 8-2 (emphasis added).  Thus, the only question that remains is "For how long did T&T pay SLB Drivers on a weekly pay basis?".

**At this point then, this Court need only hold as follows**: For the period of time in which T&T paid Plaintiffs a flat weekly rate, the proper method of calculating their overtime rate is half-time (0.5) for all hours over forty (40) but under sixty (60) and time-and-a-half (1.5) for all hours over sixty (60).  The issue of how long the weekly salary

**Page 39 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

lasted can be determined by a jury or by good faith disclosures and negotiations between the parties.

Also, the fact that some Plaintiffs were paid less in some weeks does not tell us when T&T's day-rate started because employers are allowed to deduct money for missed days, even on a weekly salary arrangement.  Thus, Plaintiffs' testimony and Defendants' evidence fails to establish a precise timeline for when the weekly salary ended and when the day-rate began.

## VII.        CONCLUSION

For all the foregoing premises, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Partial Summary Judgment in every respect and deny T&T Defendants' Motion for Summary Judgment in its entirety.

**Page 40 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

Respectfully submitted,

**PLAINTIFFS RICHARD ALEXANDER,
BENNIE COLLUM, DON DAVIS, DUANE
GRIMES, JOHN HOUPT, JOHN HOWLAND,
JASON PHILLIPS, DWAYNE PRITCHARD,
RANDY SCHROEDER, KYLAN UTLEY
and ROBERT McNEIL**

SANFORD LAW FIRM, PLLC
ONE FINANCIAL CENTER,
650 SOUTH SHACKLEFORD, SUITE 411
LITTLE ROCK, ARKANSAS 72211
TELEPHONE: (501) 221-0088
FACSIMILE: (888) 787-2040

By:     Joshua West
        Ark. Bar No. 2012121
        west@sanfordlawfirm.com

and:    /s/ Josh Sanford _____
        Josh Sanford
        Ark. Bar No. 2001037
        josh@sanfordlawfirm.com

**Page 41 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**

## CERTIFICATE OF SERVICE

I, Josh Sanford, hereby certify that, on the date imprinted by the CM/ECF system, the foregoing REPLY was filed via the CM/ECF system, which will provide notice to the following attorneys of record:

Brent Langdon, Esq.
blangdon@ldatty.com
Melissa G. McPherson, Esq.
lisam@ldatty.com
LANGDON DAVIS, L.L.P.
5902 Summerfield, Suite A
Texarkana, Texas 75505-5547
Telephone: (903) 223-3246
Facsimile: (903) 223-5227

Samuel Zurik III, Esq.
Robert P. Lombardi, Esq.
THE KULLMAN FIRM, P.L.C.
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4189
E-Mail: sz@kullmanlaw.com
E-Mail: rpl@kullmanlaw.com

/s/ Josh Sanford
**Josh Sanford**

**Page 42 of 42**
**Richard Alexander, et al. v. Tutle and Tutle Trucking, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:13-cv-650-BSM**
**Reply in Support of Motion for Partial Summary Judgment**